## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO: 23-14122-CV-MIDDLEBROOKS

INDIANTOWN MARINE CENTER, LLC,
MARINEMAX, INC., MOBRO MARINE, INC.,
BEYEL BROTHERS, INC., MCCULLEY
MARINE SERVICES, INC., FERREIRA
CONSTRUCTION CO., INC., DL MILLING
FAMILY, LLC, ATLANTIC & GULF DREDGING
& MARINE, LLC, WILLIS CUSTOM YACHTS,
LLC, AC MERIDIAN MARINA, LLC, INDICO
PROPERTIES, INC. d/b/a INDIANTOWN
MARINA, HMY YACHT SALES, INC., and
SIMPLY YACHTS, LLC,

      Plaintiffs,

v.

FLORIDA EAST COAST RAILWAY, LLC,
UNITED STATES COAST GUARD, and ARMY
CORPS OF ENGINEERS,

      Defendants.

_____/

## ORDER GRANTING BRIGHTLINE'S MOTION TO INTERVENE

THIS CAUSE comes before the Court upon All Aboard Florida – Operations LLC, n/k/a

Brightline Trains Florida, LLC's ("Brightline") Motion to Intervene, filed May 8, 2023. (DE 7,

"Motion"). In the Motion, Brightline represents that Plaintiffs and Defendant Florida East Coast

Railway, LLC ("FECR") have no objection to the relief sought in the Motion and that the U.S.

Coast Guard ("USCG") and the U.S. Army Corps of Engineers ("USACE") take no position on

the Motion. (DE 7 at 1). Given that none of the parties oppose the Motion and that Brightline has

shown that intervention is proper either Rule 24(a) or Rule 24(b), the Court grants Brightline's

Motion to Intervene (DE 7).

1

## I.    BACKGROUND

According to the Complaint, this case involves the Florida East Coast Railway ("FEC") Stuart Railroad Bridge (the "Bridge"), which crosses the St. Lucie River section of the Okeechobee Waterway ("OWW") in Stuart, Florida and is owned by Defendant FECR. (DE 1, ¶ 17, Compl.) The Bridge, which crosses the OWW in Stuart, Florida, is a single-leaf bascule railroad bridge with a seven-foot vertical clearance at mean high water in the closed position. (*Id.* at ¶ 18). The Bridge provides the sole and exclusive access to marinas, shipyards, marine service facilities, marine service providers, marine towers, residents, and boat owners, including Plaintiffs, along the OWW westward of the bridge. (*Id.* at ¶ 21). Plaintiffs seek declaratory and injunctive relief regarding the planned operation of the Bridge. (*Id.* at pp. 20–21).

On May 3, 2022, the USCG, via a "Notification of Inquiry" ("NOI") published in the Federal Register, sought information and comments on a proposed change to the operating regulations for the Bridge. (*Id.* at ¶ 23). The NOI stated, "In anticipation of passenger rail service across the FEC Railroad Bridge, the Coast Guard intends to propose a change that will allow the drawbridge to operate on a more predictable schedule." (*Id.* at ¶ 24). The referenced passenger rail service is the extension of the Brightline high-speed rail service, which currently travels between Miami, FL and West Palm Beach, FL. (*Id.* at ¶ 25). Brightline plans to extend service from West Palm Beach to Orlando, FL, utilizing the Bridge over the OWW. (*Id.* at ¶¶ 25, 27). Although the current regulations at 33 C.F.R. § 117.317(c) state that "[t]he draw is normally in the fully open position" (*id.* at ¶ 28), "the proposed 'predictable' schedule would change the current, longstanding, operating schedule for the Bridge which provides that the Bridge will remain in the open position to a new schedule that will require the Bridge to be in the closed position at all times, except for fifteen minutes of opening time every hour during daylight hours" (*id.* at ¶ 29). The

2

NOI, after revision, asked, "At what frequency and duration should the drawbridge openings occur in order to meet the needs of navigation." (*Id.* at ¶ 33).

After the comment period concluded on July 27, 2022, "the overwhelming majority of [the 2,357 comments] objected to the suggested 15-minute per hour bridge opening period or any change resulting in the Bridge remaining in the closed position instead of the open position." (*Id.* at ¶ 36). On March 16, 2023, Plaintiffs learned, through a Notice to Navigation issued by USACE, that the Bridge would be closed from April 16 through May 29, 2023 (since updated to May 1, 2023 to May 22, 2023) to allow for upgrades for Brightline's high-speed rail service. (*Id.* at ¶ 40). Plaintiffs believe that after the re-opening of the Bridge, Brightline will conduct a testing period to address the operation of the Brightline trains. (*Id.* at ¶ 43). Brightline's website provides a train schedule listing 32 trains per day (16 roundtrip) across the route and advertises that service from Miami to Orlando begins in 2023. (*Id.* at ¶¶ 45, 47). (In the Motion to Intervene, Brightline represents that "it expects to commence operations between West Palm Beach and Orlando during the Summer of this year." (DE 7 at 2).) Plaintiff alleges that "[t]he commencement of planned operations by Brightline and the resulting change in the Bridge's schedule, has not been authorized through applicable rulemaking procedure and, therefore, the [USCG] should not allow a revision to the operation of the Bridge, which is to remain open by default according to 33 CFR 117.317(c)." (*Id.* at ¶ 48). Plaintiffs complain that the change will "seriously obstruct the efficient movement of recreational and commercial marine traffic, including dredging equipment, as well as emergency vessels." (*Id.* at ¶ 49). They also cite to negative impacts on marine-related service businesses, property values, and boating conditions at the Bridge. (*Id*).

Plaintiffs seek, among other things, a declaration that Defendants' accommodation of Brightline's plan to keep the Bridge in a default closed position to accommodate the passage of its

32 trains constitutes an unreasonable obstruction of the free navigation of a navigable waterway of the U.S. by Defendants in violation of 33 U.S.C. §§ 494, 512, 513. (*Id.* at p. 21). They also seek a preliminary and permanent injunction prohibiting the FEC from allowing Brightline to run trains across the Bridge in accordance with Brightline's posted schedule until formal rulemaking to change the Bridge's operation has occurred. (*Id.* at pp. 20–21).

Given that the case "directly relates to Brightline's passenger service and seeks to adjudicate its right to use the [Bridge]," Brightline seeks to intervene "to be allowed to participate in th[e] debate" regarding whether Plaintiffs should prevail on the merits. (DE 7 at 6).

## II.   STANDARD

Under Federal Rule of Civil Procedure 24(a), a nonparty is entitled to intervene where the nonparty can show: "(1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests." *Fed. Savs. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993) (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)). The timeliness of a motion to intervene is a threshold factor that must be satisfied before the other factors should be considered. *NAACP v. New York*, 413 U.S. 345, 365 (1973) ("If [a motion to intervene] is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness.").

Under Rule 24(b), a district court has the discretion to permit a movant to intervene where the motion is timely, the movant has a claim or defense that shares a common question of law or fact with the main action, and the proposed intervention will not unduly delay or prejudice the adjudication of the original parties' rights in the litigation. Fed. R. Civ. P. 24(b)(1)(B) & (b)(3).

4

Rule 24(c) requires that a motion to intervene be served on the parties as provided in Rule 5. Fed. R. Civ. P. 24(c). In addition, the motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." *Id.*

## III.   DISCUSSION

### A. Procedural Requirements

As an initial matter, the Court notes that Brightline did not attach a pleading setting forth its claims or defenses, as required by Rule 24(c). However, Brightline did ask that all Defendants have the same deadline to respond to the Complaint: the deadline applicable to the federal Defendants, USCG and USACE. "Some courts of appeals have denied intervention to movants who have failed strictly to heed the requirements of Rule 24(c), *see, e.g., Abramson v. Pennwood Investment Corp.*, 392 F.2d 759, 761–62 (2d Cir. 1968), but the majority of circuits, including this circuit, has not, choosing instead to disregard nonprejudicial technical defects." *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985). Here, the deadline for responding to the Complaint has not passed, and no Defendant has filed any response to the Complaint. In these circumstances, failure to attach a pleading to the Motion is not fatal to Brightline's request to intervene, particularly where Brightline has provided several potential defenses in its Motion (DE 7 at 9). In addition, the Court sets the same deadline for all Defendants to respond to the Complaint, as the deadline application to the federal Defendants, USCG and USACE.

### B. Intervention of Right (Rule 24(a))

**Timely.** There is no question that Brightline's Motion is timely. The Complaint was filed on April 28, 2023, and Brightline sought to intervene on May 8, 2023. As a result, Brightline timely moved to intervene 10 days after the Complaint was filed.

**Interest.** It is also clear that Brightline has an interest relating to the property or transaction at issue in this case. Under Rule 24(a)(2), Brightline's intervention must be supported by a "direct, substantial, legally protectible interest in the proceeding." *Chiles*, 865 F.2d at 1213–14. In other words, Brightline "must be at least . . . real part[ies] in interest in the transaction which is the subject of the proceeding." *Id.* The inquiry "is 'a flexible one, which focuses on the particular facts and circumstances surrounding each [motion for intervention].'" *Id.* at 1214.

Brightline represents that it holds Passenger Service Easements for portions of FECR's rail corridor, including the portion which contains the Bridge. (DE 7-2, Second Amended and Restated Grant of Passenger Service Easement (West Palm Beach to Cocoa)). The easements give Brightline a variety of rights, including "the right to operate trains" across the Bridge. (DE 7-2 at 5, § 2.1(a); *id.* at 18–19). Should the Court issue the declaratory and injunctive relief sought— preventing Brightline from "run[ning] trains across the Bridge until formal rulemaking to change the Bridge's operation has occurred"—Brightline's easements would be implicated, particularly its right to operate trains across the Bridge. As a result, Brightline clearly has a "direct, substantial, and legally protectable interest" in the subject of this case and thus constitutes a "real party in interest" in this proceeding.

**Impairment.** The nature of the intervenor's interest and the effect of this action on the intervenor's ability to protect that interest are closely related. *Chiles*, 865 F.2d at 1214. Given that Plaintiffs seek, in the form of declaratory and injunctive relief, to stop Brightline's service over the Bridge until formal rulemaking has occurred, Brightline's interest may be impaired by this litigation. As a result, this third requirement has been met.

**Inadequate Representation.** The fourth and final requirement "is satisfied if the [proposed intervenor] shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine*

6

*Workers of America*, 404 U.S. 528, 538 n.10 (1972). "[T]he burden of making that showing should be treated as minimal." *Id.* Thus, Brightline "should be allowed to intervene unless it is clear that [Defendants] will provide adequate representation." *Chiles*, 865 F.2d at 1214 (citing 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1909, at 319 (2d ed. 1986)). Two Defendants—USCG and USACE—are agencies of the federal government. (Compl. at ¶¶ 14, 15). USCG is responsible for maritime safety, security, and environmental stewardship in U.S. ports and waterways; USACE is responsible for the maintenance of navigable waterways and the prevention of obstructions to navigation, including bridges. (*Id.* at ¶¶ 14, 15). Plaintiff alleges that it believes that FECR "owns and operates the FEC Railroad Bridge, mile 7.4 at Stuart." (*Id.* at ¶ 16). Although some Defendants may have similar interests as Brightline, Brightline's interest in the Bridge's operating schedule is not identical to any Defendant. Brightline represents that it "has a direct financial interest in the outcome of this case and the most to gain or lose" given that Plaintiffs seek to prevent Brightline from running passenger trains over the Bridge according to the planned schedule. (DE 7 at 8). Brightline also cites its "significantly greater interest in expediting the resolution of this lawsuit." (*Id.* at 9). Finally, Brightline explains that it can better address questions pertaining to its planned operations over the Bridge. (*Id.*) Given Brightline's financial interest in the subject matter of this case and that no other Defendant has the same interest, Brightline has shown its interests will not be adequately represented without intervention.

Having satisfied all four factors under Rule 24(a), the Court finds that Brightline is entitled to intervene in this action as a matter of right.

### C. Permissive Intervention.

In the alternative, the Court finds that Brightline meets the standard under Rule 24(b) to intervene at the Court's discretion. As stated above, Brightline timely moved to intervention.

7

Brightline represents that they will likely assert defenses that will be asserted by other Defendants, including that the statutes relied upon are inapplicable and do not support a private right of action. (DE 7 at 9). They also assert that there will be no undue delay or prejudice of the existing parties' rights in the litigation. (*Id.*). Given that Brightline moved to intervene within 10 days after the Complaint was filed, the Court perceives no undue delay or prejudice by allowing Brightline to intervene. (*Id.*). Indeed, no party opposes Brightline's intervention, which suggests a lack of prejudice as a result of intervention. Thus, Brightline has demonstrated that the Court should exercise its discretion and allow Brightline to intervene under Rule 24(b).

## IV.   CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that:

(1) Brightline's Motion to Intervene (DE 7) is **GRANTED.**

(2) All Aboard Florida – Operations LLC, n/k/a Brightline Trains Florida, LLC is **ADDED** as a Defendant.

(3) The deadline for all Defendants, including All Aboard Florida – Operations LLC, n/k/a Brightline Trains Florida, LLC, to respond to the Complaint is the deadline applicable to the federal Defendants, USCG and USACE.

**SIGNED** in Chambers at West Palm Beach, Florida this 11 day of May, 2023.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:   Counsel of Record