## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 2:23-cv-14122

INDIANTOWN MARINE CENTER, LLC,
MARINEMAX, INC.,
MOBRO MARINE, INC.,
BEYEL BROTHERS, INC.,
MCCULLEY MARINE SERVICES, INC.,
FERREIRA CONSTRUCTION CO., INC.,
DL MILLING FAMILY, LLC,
ATLANTIC & GULF DREDGING & MARINE, LLC,
WILLIS CUSTOM YACHTS, LLC,
AC MERIDIAN MARINA, LLC,
INDICO PROPERTIES, INC. d/b/a INDIANTOWN MARINA,
HMY YACHT SALES, INC.,
SIMPLY YACHTS, LLC,
P AND L TOWING AND TRANSPORTATION, INC.,
STUART YARD, LLC,
RED2GREEN MARINE, LLC,
GRAND BANKS YACHT SERVICES, LLC d/b/a GB MARINE GROUP
MARINE INDUSTRIES ASSOCIATION OF THE TREASURE COAST, INC.,
THE SOUTHWEST FLORIDA MARINE INDUSTRIES ASSOCIATION, INC. d/b/a THE
MARINE INDUSTRIES ASSOCIATION OF SOUTHWEST FLORIDA & TAMPA BAY,
SPENCER CHRISTOPHER MARITIME HOLDINGS INC. d/b/a SPENCER CHRISTOPHER
YACHT MANAGEMENT
**Plaintiffs,**

**vs.**

ALL ABOARD FLORIDA - OPERATIONS LLC, n/k/a BRIGHTLINE
TRAINS FLORIDA, LLC
FLORIDA EAST COAST RAILWAY, LLC
UNITED STATES COAST GUARD, &
UNITED STATES ARMY CORPS OF ENGINEERS,
**Defendants.**

### AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND WRIT OF MANDAMUS

Plaintiffs INDIANTOWN MARINE CENTER, LLC, MARINEMAX, INC., MOBRO

MARINE, INC., BEYEL BROTHERS, INC., MCCULLEY MARINE SERVICES, INC.,

1

FERREIRA CONSTRUCTION CO., INC., DL MILLING FAMILY, LLC, ATLANTIC & GULF DREDGING & MARINE, LLC, WILLIS CUSTOM YACHTS, LLC, AC MERIDIAN MARINA, LLC, INDICO PROPERTIES, INC. d/b/a INDIANTOWN MARINA, HMY YACHT SALES, INC., SIMPLY YACHTS, LLC, P AND L TOWING AND TRANSPORTATION, INC., STUART YARD, LLC, RED2GREEN MARINE, LLC, GRAND BANKS YACHT SERVICES, LLC d/b/a GB MARINE GROUP, MARINE INDUSTRIES ASSOCIATION OF THE TREASURE COAST, INC., THE SOUTHWEST FLORIDA MARINE INDUSTRIES ASSOCIATION, INC. d/b/a THE MARINE INDUSTRIES ASSOCIATION OF SOUTHWEST FLORIDA & TAMPA BAY, and SPENCER CHRISTOPHER MARITIME HOLDINGS INC. d/b/a  SPENCER CHRISTOPHER YACHT MANAGEMENT (collectively, the "Plaintiffs") by and through their undersigned counsel file this Complaint for Declaratory and Injunctive Relief, and a Writ of Mandamus and show as follows:

**Jurisdiction:**

1. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this claim arises under the laws of the United States, specifically Chapter Eleven of Title 33, Navigation and Navigable Waters.

2. The Court may grant declaratory relief in this action under 28 U.S.C. §§ 2201 – 2202 as this action seeks a declaration of rights and violations of those rights under Chapter Eleven of Title 33, Navigation and Navigable Waters, and more particularly 33 U.S.C. §§ 494, 512, 513.

3. In the absence of declaratory relief, the Court is also empowered by 28 U.S.C. § 1361 to issue a writ of mandamus compelling the Coast Guard and Army Corps of Engineers to

act in accordance with their duties under Chapter Eleven of Title 33, Navigation and Navigable Waters, and more particularly 33 U.S.C. §§ 494, 512, 513.

4. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this judicial district are sufficient for the exercise of jurisdiction over Defendants, satisfying the standard set forth by *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

5. Venue is properly before this Court under 28 U.S.C. § 1391 as the drawbridge in question is within this Court's jurisdiction.

**Parties**:

1. Plaintiff, INDIANTOWN MARINE CENTER LLC, is a Florida limited liability company with a registered agent in Indiantown Florida, that provides dockage, workspace, long-term storage space, and other repair and maintenance services for the maritime industry as well as offering a convenient Hurricane Haulout Program, who opposes the planned obstruction of free navigation on the Okeechobee Waterway ("OWW") resulting from the unauthorized revision to the long-standing operating schedule of the Florida East Coast Stuart Railroad Bridge at mile 7.4 (the "Bridge").

2. Plaintiff, MARINEMAX, INC., is a Florida Corporation engaged in the provision of maritime services with a registered agent in North Palm Beach, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

3. Plaintiff, MOBRO MARINE, INC., is a Florida Corporation engaged in the provision of maritime services with its principal place of business in Green Grove Springs, Florida near

the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

4. Plaintiff, BEYEL BROTHERS, INC., is a Florida Corporation engaged in the provision of maritime services with its principal place of business in Cocoa, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

5. Plaintiff, MCCULLEY MARINE SERVICES, INC., is a Florida Corporation engaged in the provision of maritime services with its principal place of business in Fort Pierce, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

6. Plaintiff, FERREIRA CONSTRUCTION CO., INC., is a Florida Corporation engaged in the provision of maritime services with its registered agent in Stuart, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

7. Plaintiff, DL MILLING FAMILY, LLC, is a Florida limited liability company engaged in the provision of maritime services with its principal place of business in Palm Beach Gardens, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

8. Plaintiff, ATLANTIC & GULF DREDGING & MARINE, LLC, is a Florida limited liability company engaged in the provision of maritime services with its principal place of business in Indiantown, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

4

9.      Plaintiff, WILLIS CUSTOM YACHTS, LLC, is a Florida limited liability company engaged in the provision of maritime services with its principal place of business in Stuart Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

10.     Plaintiff, AC MERIDIAN MARINA, LLC, is a foreign limited liability compnay engaged in the provision of maritime services with its principal place of business in Palm City, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

11.     Plaintiff, INDICO PROPERTIES, INC. d/b/a INDIANTOWN MARINA, is a Florida corporation engaged in the provision of maritime services with its principal place of business in Jupiter, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

12.     Plaintiff, HMY YACHT SALES, INC., is a Florida Corporation engaged in the provision of maritime services with its principal place of business in Palm Beach Gardens, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

13.     Plaintiff, SIMPLY YACHTS, LLC, is a Florida limited liability company engaged in the provision of maritime services with its principal place of business in Stuart, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

14.     Plaintiff, P AND L TOWING AND TRANSPORTATION, INC., is a Florida Corporation engaged in the provision of maritime services with its principal place of business in Miami,

Florida that utilizes the OWW and the Bridge for commercial maritime services, and opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

15. Plaintiff, STUART YARD LLC, a Virginia limited liability company, is a historic yard that provides commercial waterfront property to various tenants engaged in waterfront construction, dredging, and recreational boating in Stuart, Florida that opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW because of the risk to its rental properties.

16. Plaintiff, RED2GREEN MARINE, LLC, is a Florida limited liability company engaged in the provision of maritime services with its principal place of business in Palm City, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

17. Plaintiff, GRAND BANKS YACHT SERVICES, LLC d/b/a GB MARINE GROUP is a Florida limited liability company engaged in the provision of maritime services with its principal place of business in Stuart, Florida near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

18. Plaintiff, MARINE INDUSTRIES ASSOCIATION OF THE TREASURE COAST, INC., is a Florida corporation with its principal place of business in Stuart, FL.  It is a 501(c)6 trade association promoting the general welfare of Florida's marine industries near the OWW and the Bridge and is made up of members who oppose the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

19.   Plaintiff, THE SOUTHWEST FLORIDA MARINE INDUSTRIES ASSOCIATION, INC. d/b/a THE MARINE INDUSTRIES ASSOCIATION OF SOUTHWEST FLORIDA & TAMPA BAY, is a Florida corporation and an association of over 250 members with its principal place of business in Fort Myers, FL that promotes the general welfare of Florida's marine industries near the OWW and the Bridge who opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

20.   Plaintiff, SPENCER CHRISTOPHER MARITIME HOLDINGS INC. d/b/a SPENCER CHRISTOPHER YACHT MANAGEMENT, is a Florida Corporation engaged in the provision of maritime services with its principal place of business in Stuart, Florida that utilizes the OWW and the Bridge for commercial maritime services, and opposes the planned obstruction of the free navigation of the OWW by changing the operation of the Bridge across the OWW.

21.   The Defendant, United States Coast Guard, is an agency of the United States of America and is the principal Federal agency responsible for maritime safety, security, and environmental stewardship in U.S. ports and waterways.

22.   The Defendant, United States Army Corps of Engineers, is an agency of the United States of America, Department of Defense, and is responsible for the maintenance of navigable waterways and the prevention of obstructions to navigation, including bridges, pursuant to Section 10 of the Rivers and Harbors Act of 1899.  33 U.S.C. § 1; 33 U.S.C. § 401 et seq.

23.   The Defendant, ALL ABOARD FLORIDA - OPERATIONS LLC, n/k/a BRIGHTLINE TRAINS FLORIDA, LLC was added to this lawsuit on May 12, 2023 through a granted Motion to Intervene.

24. Upon information and belief the, FLORIDA EAST COAST RAILWAY, LLC owns and operates the FEC Railroad Bridge, mile 7.4 at Stuart, which crosses the Okeechobee Waterway.

**Background and Relevant Facts**

25. This case involves the Florida East Coast Railway ("FEC") Stuart Railroad Bridge (the "Bridge"), which crosses the St. Lucie River section of the Okeechobee Waterway ("OWW") in the vicinity of Stuart, Florida and is owned by the Defendant, Florida East Coast Railway, LLC.

26. The Bridge, crosses the OWW, at mile 7.4, in Stuart, Florida, and is a 96 year-old single-leaf bascule railroad bridge with a seven-foot vertical clearance at mean high water in the closed position. The normal operating schedule for the bridge is found in 33 CFR 117.317(c).

27. The OWW is part of the navigable waters of the United States and is under the jurisdiction of the Defendant, U.S. Army Corps of Engineers ("USACE").

28. The OWW connects the communities of Palm City, Port St. Lucie, parts of Stuart, and the Okeechobee Waterway to the Atlantic and the north-south portion of the Intracoastal Waterway. The Okeechobee Waterway connects the east and west coasts of Florida, is maintained at a depth of 8 feet and is suitable for both commercial tug-barge and recreational traffic. The 165 mile waterway from Stuart on the east coast to Ft. Myers on the west coast saves approximately 360 miles compared to rounding the Florida peninsula. The Army Corps of Engineers reports that approximately 10,000 vessels and 26,000 tons of cargo transit the waterways' nearby St. Lucie lock each year.

29.     The Bridge provides the sole and exclusive access to marinas, shipyards, marine service facilities, marine service providers, marine towers, residents and boat owners including the Plaintiffs, along the OWW westward of the bridge.

30.     The operation of the Bridge is subject to regulatory oversight by the Defendant, United States Coast Guard ("USCG" or "Coast Guard").

31.     The Coast Guard is charged with the duty to prevent any interference with navigability in the waters of the United States by bridges, or other obstructions.  33 U.S.C. § 494.

32.     The Coast Guard, under its Waterways Analysis Management System ("WAMS") conducted a review of the railroad bridges over the St. Lucie River in 2018 titled, Waterways Analysis and Management System For Intracoastal Waterway Miles 925-1005. That study concluded that the addition of passenger rail service over the FEC Railroad Bridge, crossing over the OWW, would create an obstruction to navigation if operated under the current regulation, 33 CFR 117.317(c).

33.     On May 3, 2022, a "Notification of Inquiry" ("NOI") was published in the Federal Register by the Department of Homeland Security, U.S. Coast Guard, seeking information and comments on a proposed change to the operating regulations for the Florida East Coast (FEC) Railroad Bridge, mile 7.4, across the Okeechobee Waterway (OWW), at Stuart, Florida.

34.     It was stated that "[i]n anticipation of passenger rail service across the FEC Railroad Bridge, the Coast Guard intends to propose a change that will allow the drawbridge to operate on a more predictable schedule."

35.     The anticipated passenger rail service is the extension of the Brightline high-speed rail service that currently travels between Miami, FL and West Palm Beach, FL, but is now planned to continue on from West Palm Beach to Orlando, FL.

36.     Upon information and belief, ALL ABOARD FLORIDA OPERATIONS LLC is a Florida limited liability company doing business in Miami Dade County Florida.  ALL ABOARD FLORIDA OPERATIONS LLC is the owner of the fictitious name BRIGHTLINE OPERATIONS and is doing business under that name in the State of Florida ("Brightline").

37.     In order to accommodate the extension of the Brightline route to Orlando, the rail service needs to cross the OWW over the Bridge, which was never intended to remain predominantly closed to accommodate and give priority to rail traffic.  To the contrary, the 96-year history of the Bridge demonstrates that it has been operated in a manner to prioritize and accommodate marine traffic and to allow for the occasional crossing of train traffic.

38.     The current regulation at 33 CFR § 117.317(c) codifies this history stating, "[t]he draw is normally in the fully open position."

39.     The proposed "predictable" schedule would change the current, longstanding, operating schedule for the Bridge which provides that the Bridge will remain in the open position to a new schedule that will require the Bridge to be in the closed position at all times, except for fifteen minutes of opening time every hour during daylight hours.

40.     The May 3, 2022 NOI, requested comments in response to six specific questions, as follows:

> (1)  Do you currently transit through the FEC Railroad Bridge crossing the Okeechobee Waterway, mile 7.4, at Stuart, Florida?

10

(2) How often do you transit this waterway?

(3) If railway traffic impedes your navigation of this area, how long are you normally delayed?

(4) How would you propose to regulate the balance of railway and maritime traffic in this area?

(5) What challenges have you experienced when transiting this area due to these bridges and/or railway activity?

(6) Is a 15 minute hourly opening schedule sufficient for marine traffic? If not, please explain why.

(7) Should the SR 707 (Dixie Hwy) Bridge opening schedule mirror the operating schedule of the FEC Railroad Bridge?

41. On May 26, 2022, the Coast Guard received a request from the Honorable Congressman Brian Mast that the Notice of Inquiry be "recalled, rewritten, and republished."

42. In particular, the Congressman stated that Question No. 6 in the Notification was "leading" because it appeared "to have public comments acquiesce to a suggested time frame of 15 minutes and sets that as the time to counter or support. The NOI should consider all amounts of time as being sufficient for marine traffic, not only 15 minutes in a given hour."

43. In response, as published in the Federal Register on June 10, 2022, Question No. 6 of the May 3, 2022, NOI was revised to read "[a]t what frequency and duration should the drawbridge openings occur in order to meet the needs of navigation?"

44. The Coast Guard has the duty and responsibility to ensure that drawbridge regulations meet the reasonable needs of navigation in a balanced manner to accommodate, to the greatest

practical extent, the needs of all modes of transportation to include highway, rail, and marine traffic.

45.   USACE has the responsibility to assure that navigable waterways are not obstructed in a manner that will impede navigation, to preserve the public right to navigation, and to prevent interference with interstate and foreign commerce.

46.   The comment period in response to the NOI began on May 3, 2022 and was concluded on July 27, 2022.   In total, 2,357 comments were received, the overwhelming majority of which objected to the suggested 15-minute per hour bridge opening period or any change resulting in the Bridge remaining in the closed position instead of the open position.

47.   The Plaintiffs reasonably expected that after the submission of comments, the Coast Guard would take those comments into account and propose a new rule, effectively revising 33 CFR 117.317(c), that would consider the significant harm that would result from the reversal of the Bridge operation procedure.

48.   The regulation found at 33 CFR 117.8(c) provides that if the District Commander of the Coast Guard decides that a change to the operation of a drawbridge is needed, "he or she will begin a rulemaking to implement the change."

49.   Following the July 27, 2022, closing of the response to questions posed in the NOI, it was anticipated that there would be an announcement of a proposed new rule that would be subject to public notice, comments, and public hearings.   That did not occur.

50.   Presumably, a proposed new rule would give appropriate consideration to the needs of both Brightline and the maritime industry, but would not summarily reverse the existing rule found in 33 CFR 117.317(c) to the utter detriment of the maritime industry.

51.   Instead, the Plaintiffs learned on or about March 16, 2023, through the issuance of a Notice to Navigation by USACE, that the Bridge would be closed from April 16 through May 29, 2023 to allow for upgrades needed by Brightline for its high speed rail service.  The closure period has been modified and the bridge is now to be closed from May 1, 2023 to May 22, 2023.

52.   These "upgrades" undoubtedly are being performed to accommodate the use of the Bridge by Brightline.

53.   It is further noted that FEC would likely not be allowed to build a bridge comparable to this Bridge.   The Coast Guard's Clearance Guide for the Okeechobee waterway recommends a clearance of 21 feet for closed draw bridges.  The current upgrades are a way for FEC to accommodate the use of the Bridge by Brightline without addressing the Coast Guard's recommended clearances.

54.   On information and belief, after the re-opening of the Bridge on or about May 22, 2023, a testing period will commence in preparation for commencing daily operations of the Brightline route to Orlando on May 29, 2023, thereby requiring passage over the FEC Stuart Railroad Bridge.

55.   On information and belief, that testing period will have nothing to do with the impact on marine traffic, but will simply address the operation of the Brightline trains.

56.   According to the train schedule posted on the Brightline website, a total of 32 trains per day will travel the route daily (16 roundtrips) between 5:00 a.m. and 9:45 p.m., without regard to any further consideration of the impact to marine traffic and without formal revision to the rule in 33 CFR 117.317(c).

57. Brightline's website also states, "Brightline Orlando Station construction is complete, setting the stage to connect two of the fastest-growing regions in the state this summer."

58. Brightline's website also states that, "[s]ervice from Miami to Orlando begins in 2023."

59. The commencement of planned operations by Brightline and the resulting change in the Bridge's schedule, has not been authorized through applicable rulemaking procedures and, therefore, the Coast Guard should not allow a revision to the operation of the Bridge, which is to remain open by default according to 33 CFR 117.317(c).

60. The planned change to the longstanding bridge-opening schedule will seriously obstruct the efficient movement of recreational and commercial marine traffic, including dredging equipment, as well as emergency vessels. In addition, the proposed schedule will negatively impact a multitude of marine-related service businesses, reduce property values and will result in an overall unsafe boating condition at the Bridge.

61. The effects of this are already being seen by the Plaintiffs:

    a. Indiantown Marina has had several customers leave its facility in anticipation of the change to move to a facility on the other side of the Bridge.

    b. Indiantown Marine Center has had several storage and work space customers leave their facility in order to ensure their vessels are not impacted by the changes to the Bridge.

    c. Many homeowners in the Stuart area have listed their homes for sale with the stated intent of moving to the other side of the Bridge.

## Count I (Declaratory Judgment)

## (Plaintiffs v. Florida East Coast Railway, LLC.)

62. The Plaintiffs incorporate paragraphs 1 – 61 above as if fully stated herein.

63. This is an action for declaratory judgment under 28 U.S.C. § 2201 as a controversy exists between the parties regarding a federal statute and the parties rights and obligations thereunder.

64. The Plaintiffs are persons and businesses engaged in maritime services and activities along the OWW from which they enjoy income, the navigation of customers to their businesses, the free travel of emergency and rescue vessels, and general use for maritime recreation.

65. The OWW is a navigable waterway under federal law. *Lykes Bros. Inc. v. U.S. Army Corps of Engineers,* 821 F. Supp. 1457, 1462–63 (M.D. Fla. 1993), *aff'd*, 64 F.3d 630 (11th Cir. 1995) ("a waterway which is used, or is susceptible of being used, in its ordinary condition, as a highway for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water").

66. The OWW is a continuous water highway used for commercial navigation and subject to federal jurisdiction under the commerce clause. *Lykes Bros. Inc.,* 821 F. Supp. at 1463; *U.S. v. Harrell,* 926 F.2d 1036, 1040 (11th Cir.1991).

67. As businesses, owners and tenants located along and around the OWW the Plaintiffs possess common law rights to the use of the waterway including but not limited to the "right to prevent obstruction to navigation or an unlawful use of the water" and the "right to use the water in common with the public for navigation, fishing, and other purposes in which the public has an interest." *Ferry Pass Inspectors' & Shippers' Ass'n v. White's River Inspectors' & Shippers' Ass'n*, 48 So. 643, 645 (Fla. 1909).

68. The Bridge is a single rail drawbridge over the OWW that is owned by the FEC.

69. FEC operates the Bridge pursuant to 33 U.S.C. §§ 494, 512, 513 and the regulations promulgated thereunder.

70. The Bridge's operation is explicitly codified at 33 CFR § 117.317(c).

71. The current operation under 33 CFR § 117.317(c) calls for the Bridge to remain open by default until a train approaches at which point the Bridge will close, let the train pass, and then the Bridge will return to the open position.

72. When the Bridge is closed, any vessel taller than seven feet is obstructed from passing beneath the Bridge.

73. Historically and by law, the Bridge has defaulted to the open position to prevent any obstruction of the OWW and only closed to allow the occasional passing of freight trains during off hours.

74. On information and belief there are currently only 12 to 14 freight trains that pass over the Bridge per day and typically during the night.

75. 33 CFR § 117.8 requires a rulemaking to implement a permanent change in drawbridge operation requirement.

76. According to its website and as publicly stated, Brightline intends to commence 16 daily round trips with hourly departures between 5:00 a.m. and 9:45 p.m. that will run between Miami and Orlando beginning in the summer of 2023, resulting in 32 passes over the single rail Bridge representing a significant increase in use of the Bridge and the amount of time the Bridge completely obstructs the OWW.

77. On information and belief, FEC intends to facilitate Brightline's planned schedule by maintaining the Bridge in the closed position and only opening the Bridge to marine traffic 15 minutes per hour.

16

78. Despite constituting a permanent change in the drawbridge operation requirement, no rulemaking has occurred as required under 33 CFR § 117.8 in order to amend the currently applicable regulations governing the operation of the Bridge.

79. Accordingly, FEC's operation of the Bridge to accommodate Brightline will constitute a violation of applicable law.

80. Additionally, FEC's planned operation of the Bridge to accommodate Brightline constitutes an unreasonable obstruction of the free navigation of the OWW and is prohibited by 33 U.S.C. §§ 494, 512.

81. The Plaintiffs have suffered and will continue to suffer irreparable injury and actual harm by being obstructed from the free navigation of a federal waterway.

82. The operation of a bridge across any navigable waters of the United States is balanced against and subject to the paramount right of navigation.

83. FEC's operation of the Bridge to accommodate Brightline will prevent the Plaintiffs and the general public from accessing the Plaintiffs' businesses along the OWW.

84. Customers of the Plaintiffs have already taken their business elsewhere because of the anticipated change to the Bridge's operation causing harm to the Plaintiffs.

85. Further harm is imminent to Plaintiffs, as there is a substantial likelihood that the loss of business will be exacerbated by FEC's unlawful operation of the Bridge beginning in the summer of 2023.

86. FEC's unlawful operation of the Bridge will deter mariners from traveling to the Plaintiffs' places of business out of fear of becoming stuck on one side of the Bridge.

87.  FEC's allowance of Brightline to operate trains in the manner described above will impact the health, life, safety of the employees and staff of the Plaintiffs, and may block access to fire boats and other emergency responders from water access to the OWW.

88.  FEC's planned unlawful operation of the Bridge threatens imminent harm that raises questions regarding the Plaintiffs' rights and protection under 33 U.S.C. §§ 494, 512.

89.  The Plaintiffs seek a declaration by this Court as to their rights and protections under these statutes and as to FEC's planned unlawful operation of the Bridge.

90.  The Plaintiffs seek an Order of the Court declaring the FEC's planned operation of the Bridge as unlawful and in violation of 33 CFR §§ 117.8, 117.317(c), as well as an unreasonable obstruction of the of the free navigation of a navigable waterway of the United States by Defendants in violation of 33 U.S.C. §§ 494, 512, 513 and any other relief the Court finds just and proper.

## Count II (Declaratory Judgment)

## (Plaintiffs v. United States Coast Guard & Army Corps of Engineers)

91.  The Plaintiffs incorporate paragraphs 1 – 90 above as if fully stated herein.

92.  This is an action for declaratory judgment under 28 U.S.C. § 2201 as a controversy exists between the parties regarding a federal statute and the parties rights and obligations thereunder.

93.  The Plaintiffs are persons and businesses engaged in maritime services and activities along the OWW from which they enjoy income, the navigation of customers to their businesses, the free travel of emergency and rescue vessels, and general use for maritime recreation.

94.  The Bridge is a single rail drawbridge over the OWW that is owned by the FEC, operated under the Coast Guard's regulations, and affected by USACE's governance of the OWW.

95. Title 33 Navigation and Navigable Waters, specifically 33 U.S.C. §§ 494, 512, 513, prohibits the obstruction of free navigation along any navigable waters of the United States caused by bridges, the maintenance of bridges, or alterations to bridges.

96. The Coast Guard has not released an opinion as to whether the planned changes to the Bridge's operation will create an obstruction under 33 U.S.C. § 513.

97. The Coast Guard did nothing with the comments received from May 2022 – July 2022 and has not proposed a new rule governing the Bridge leading to a controversy between the parties.

98. The operation of a bridge across any navigable waters of the United States is balanced against and subject to the paramount right of navigation.

99. Customers of the Plaintiffs have already taken their business elsewhere because of the anticipated change to the Bridge's operation causing harm to the Plaintiffs.

100. Further harm is caused by allowing a private entity to bypass required, formal rulemaking procedures.

101. As indicated by Brightline's planned schedule, the Coast Guard, USACE, and the FEC intend to allow the Bridge's operation to change despite the protest of the public and there is a substantial likelihood that the harm to the Plaintiffs will continue and will grow.

102. Brightline's planned schedule constitutes an unreasonable obstruction of the free navigation of the OWW and is prohibited by 33 U.S.C. §§ 494, 512.

103. Once the planned change to the Bridge operation is in place there is a substantial likelihood that the OWW will become obstructed with boat traffic creating public safety concerns.

104. There is a substantial likelihood that the planned change to the Bridge's operation will obstruct the free navigation, free commercial use, and free recreational use of the OWW.

105. There is also a great potential for additional harm to occur caused by the buildup of marine traffic that may result in accidents, injury, or the prevention of emergency services.

106. Without declaratory relief the harms being experienced by the Plaintiffs will continue and grow.

107. Serving the public interest is a primary goal of the declaratory judgment being sought in addition to remedying the harm experienced by the Plaintiffs.

108. A decision to change the operation of a Bridge involving high speed passenger trains, freight trains, and substantial marine traffic is an enormous public safety issue.

109. A change to the operation of the Bridge will also have severe impacts on the local economy if the damages that have already occurred continue and grow.

110. The formal rulemaking process is intended to involve the public in order to best meet the needs of the public.

111. The Defendants' planned change has caused a dispute resulting in actual harm and the substantial likelihood of future harm that raises questions regarding the Plaintiffs' rights and protection under 33 U.S.C. §§ 494, 512.  The Plaintiffs seek a declaration by this Court as to their rights and protections under these statutes.

112. The Defendants' planned change is an apparent violation of the Coast Guard's and USACE's duties under 33 U.S.C. §§ 494, 512, 513 that has caused a dispute resulting in actual harm and the substantial likelihood of future harm.  The Plaintiffs seek a declaration by this Court as to the duties of the Coast Guard and USACE under these statutes.

113. The parties' dispute regarding the Defendant's planned change creates a bona fide, actual, present, and practical need for an opinion from the Secretary under 33 U.S.C. § 513 regarding the effect on navigability of the Bridge's new plan of operation.  The Plaintiffs

seek a declaration that the Coast Guard has a duty to issue an opinion on the effect the change to the Bridge's operation will have on the free navigation of the OWW.

114. The parties' dispute regarding the Defendants' planned change creates a bona fide, actual, present, and practical need for a declaration that the Defendants actions are an unreasonable obstruction of the free navigation of the OWW and should be enjoined.

115. The Plaintiffs seek an Order of the Court declaring the Coast Guard's, USACE's, and the FEC's accommodation of Brightline's plan to keep the Bridge in a default closed position to accommodate the passage of 32 trains across the Bridge constitutes an unreasonable obstruction of the free navigation of a navigable waterway of the United States by Defendants in violation of 33 U.S.C. §§ 494, 512, 513 and any other relief the Court finds just and proper.

### Count III (Writ of Mandamus)

### (Plaintiffs v. United States Coast Guard & Army Corps of Engineers)

116. The Plaintiffs incorporate paragraphs 1 – 115 above as if fully stated herein.

117. Under 28 U.S.C. § 1361, this Court has original jurisdiction over mandamus actions seeking to compel United States agencies to perform a duty owed to the Plaintiff.

118. A writ of mandamus requires that three elements be met: (1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy can be available.

119. Each of these elements is met based on the above.

120. The Coast Guard is an agency of the United States and can therefore be compelled to act under 28 U.S.C. § 1361.

121. USACE is an agency of the United States and can therefore be compelled to act under 28 U.S.C. § 1361.

122. The OWW is a navigable waterway under federal law.

123. The OWW is a continuous water highway used for commercial navigation and subject to federal jurisdiction under the commerce clause.

124. The Plaintiffs are persons and businesses engaged in maritime services and activities along the OWW from which they enjoy income, the navigation of customers to their businesses, the free travel of emergency and rescue vessels, and general use for maritime recreation.

125. The planned change to the Bridge's operation has caused harm, will continue to cause harm, and will cause further harm to the Plaintiffs income, the navigation of the Plaintiffs' customers to their businesses, the free travel of emergency and rescue vessels, and the general use of the Okeechobee Waterway for maritime recreation by obstructing the navigation of a federal waterway.

126. The Plaintiffs have a clear right to relief from the obstruction that is causing their injury and that has a substantial likelihood to cause further injury.

127. The operation of a bridge across any navigable waters of the United States is balanced against and subject to the paramount right of navigation.

128. The operation of the Bridge is governed by Chapter 11 of Title 33 Navigation and Navigable Waters.  33 U.S.C. Ch. 11.

129. USACE has a clear nondiscretionary duty to ensure the navigable waters of the United States are unobstructed. 33 U.S.C. § 403.

130. The Coast Guard has a clear nondiscretionary duty to ensure bridges across navigable waters will not obstruct free navigation.  33 U.S.C. § 494, 512.

131. If the relief sought above is denied by the Court, the Plaintiffs have no adequate remedy to stop the Bridge's new operation from obstructing the OWW other than a writ of mandamus compelling the Coast Guard or USACE to stop this obstruction in accordance with their duty.

132. The Plaintiffs seek an Order from the Court issuing a writ of mandamus that compels the Coast Guard to take action in accordance with their duty to ensure the Bridge's new operation does not obstruct the navigable waters of the United States.

133. The Plaintiffs seek an Order from the Court issuing a writ of mandamus that compels USACE to take action in accordance with their duty to ensure the Bridge's new operation does not obstruct the navigable waters of the United States.

**Prayer for Relief:**

**WHEREFORE,** Plaintiffs seek an order of the Court as follows:

1. A declaration that the FEC's planned operation of the Bridge as unlawful and in violation of 33 CFR §§ 117.8, 117.317(c), as well as an unreasonable obstruction of the free navigation of a navigable waterway of the United States by Defendants in violation of 33 U.S.C. §§ 494, 512, 513.

2. A preliminary and permanent injunction prohibiting the FEC from allowing Brightline to run trains across the Bridge in accordance with Brightline's posted schedule until formal rulemaking to change the Bridge's operation has occurred.

**3.** A permanent injunction prohibiting the FEC from allowing Brightline to run trains across the Bridge in accordance with Brightline's posted schedule until formal rulemaking has occurred to consider the effect on navigation of any proposed change to the Bridge's operation.

4. A declaration of Plaintiffs' rights and protection under 33 U.S.C. §§ 494, 512.

5. A declaration of the Coast Guard's and USACE's duties under 33 U.S.C. §§ 494, 512, 513.

6. A declaration that the Coast Guard has a duty to issue an opinion under 33 U.S.C. § 513 on the effect the change to the Bridge's operation will have on the free navigation of the OWW.

7. A declaration that the Coast Guard's, USACE's, and the FEC's accommodation of Brightline's plan to keep the Bridge in a default closed position to accommodate the passage of 32 trains across the Bridge constitutes an unreasonable obstruction of the free navigation of a navigable waterway of the United States by Defendants in violation of 33 U.S.C. §§ 494, 512, 513.

8. Issuing a writ of mandamus that compels the Coast Guard to take action in accordance with its duty to ensure the Bridge's new operation does not obstruct the navigable waters of the United States.

9. Issuing a writ of mandamus that compels USACE to take action in accordance with its duty to ensure the Bridge's new operation does not obstruct the navigable waters of the United States.

10. Ordering such other and further relief as this Court deems proper and necessary.

Date: May 19, 2023

*/s/ Gary N. Mansfield*
**GARY N. MANSFIELD, ESQ.**
**FBN: 61913**
**DAVID STONE, ESQ.**
**FBN: 400432**
**ARIANE WOLINSKY, ESQ.**
**FBN: 51719**
MANSFIELD, BRONSTEIN & STONE, LLP
500 East Broward Boulevard
Suite 1400
Fort Lauderdale, Florida 33394

Phone 954.601.5600
Service Email Designation:
litigation@mblawpa.com
*Attorneys for Plaintiffs*

*/s/ Michael H. Payne*
**Michael H. Payne, Esq.**
**FBN: (*pro hac vice*)**
**Ryan Boonstra, Esq.**
**FBN: (*pro hac vice*)**
Cohen Seglias Pallas Greenhall & Furman
1600 Market Street
32nd Floor
Philadelphia, PA 19103
P: (215) 564-1700
mhp@cohenseglias.com
*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of May, 2023 I electronically filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

*/s/ Gary N. Mansfield*
**GARY N. MANSFIELD, ESQ.**

25

## INDIANTOWN MARINE CENTER, LLC VERIFICATION

I, Daniel Romence, verify under penalty of perjury of the laws of the United States of America,

that I am an authorized representative of Plaintiff, INDIANTOWN MARINE CENTER, LLC,

and as such have the authority to execute this Verification; and I have read the foregoing

Verified Amended Complaint for Declaratory and Injunctive Relief and Writ of Mandamus and

know the contents thereof and the same are true and correct of my own knowledge, except as to

the matters therein stated upon information and belief, and as to those matters, I believe them to

be true and correct.

Dated this 18th day of May, 2023.

_____

Daniel Romence